Good morning, Your Honors. The merits of this case have gone largely undisputed by the government. In the administrative record, there are only evidence of two abstracts of judgments to support the removal of Mr. Echeverria. Does the notice of appeal encompass more than the denial of bail? In this case, it started out as a petition for a habeas petition. And in that habeas petition, he did mention that he was seeking review of his orders of removal. Well, his appeal was from the bond issue. And he says, one reason you shouldn't do the bond is that really the other findings weren't correct. That just sounds like collateral arguments about the bond, because what he wanted was to be released on bond. That's what he said. That's what his habeas was about. Correct? I believe, Your Honor, his habeas petition was both about the bond issue and about his attacking the orders of removal. And the district court judge then transferred the attacks on the removal orders to this court for review. Well, we couldn't figure out what they transferred, and that's why we retransferred the bond to the district court, supposedly. Correct, Your Honor. It looked like it was just bond, and that was the district court, so that's why I asked you that. Right, Your Honor. But I do believe that we said in the papers, looking at the habeas petition itself, he does, as a pro se appellate petitioner, raise those issues. And they were properly raised. Assuming that they are raised, were they raised with respect to all three prior convictions? It didn't strike me that there's any argument with respect to the 1995 or the 2001 conviction. He wasn't expressly clear on which removal orders. Well, yes. So there's – I mean, so even if you raised it and even if you were correct with respect to the 1992 conviction, there's no developed argument with respect to the other two, and either one would be sufficient in and of itself to justify the removal, wouldn't it? The problem here, Your Honor, is that we don't have the record of what happened in the 1995 or 2001. Well, what we've got is whatever was or wasn't adduced. I mean, we've got the record we've got. Correct, Your Honor. And in this case, it is the burden on the government to produce the records that underline the warrants.  Correct, Your Honor. But in these cases, the – under the rules of the Teleprocedure 1617, it is the burden on the government to put together the record on appeal in the file before this Court. Well, yes, but here's my point. There's no developed argument with respect to either of the other two convictions. Convictions. You really push – you push the invalidity of the 1992 conviction, but you don't make any argument with respect to the 1995 deportation order, and I think there was another one in 2001. I may have my dates slightly off. That is correct, Your Honor. There's no developed argument with respect to it. Even assuming – because they're not in the record, we're not exactly sure what they're based on. Even assuming that it was based on a reinstatement of prior orders, then those then fall with the first order. Well, the 1994 order was never appealed to the BIA, was it? Or to us? Because of the sparse record, we're just not sure what happened. There was no evidence. I – no, answer my question. And you never appealed to the BIA, were they? Or to us? I do not know whether or not they were – You don't know whether the 1994 was appealed to this Court? It is not in the administrative record. Well, it's in the – It doesn't have to be in the administrative record, does it? It's in the public record, and it's your client. Yeah. If you can't demonstrate – It certainly appears that there was no appeal taken. I'm sorry. Go ahead. Naturally. It appeals – it appears there was no appeal taken, and that's before a DEPA. So there's no excuse. No appeal taken, correct? Doesn't that conclude the 1994 matter? I'm not – I can't concede for the fact that there was no appeal. I just know that's true. But even if there were no – You don't have to concede it for a fact. What I'm saying to you is we work from a record, I believe. Yes, Your Honor. And there is no indication at the district court level that any evidence was put And there's nothing here that tells me that any appeal was taken from the 1994 removal order. If that is true, let's just – without your conceding anything, isn't that over? Isn't it all over for the 1994? If there were a waiver, then the government still has to prove that the waiver was knowing and considered, and we still don't have any evidence of that fact. Let's not play exactly that game, because I understand the approach you're taking. Let's concede – let's say – pretend there was no written waiver. There just was not an appeal. Okay? If there was not an appeal, the 1994 removal became final, correct? Putting aside – And how do you – and can it now be collaterally attacked? And how? I believe that the waiver and the non-exhaustion arguments are tied together. If there was an improper – if there was no sufficient evidence of waiver, then the exhaustion argument falls with the waiver argument. Okay. I understand your argument. Thank you. But even if there were a waiver, there are exceptions to the waiver rule that we invoke here. I don't understand why we're talking about waiver. It seems to me that it would be your burden to demonstrate the invalidity of the convictions on which his several prior removals were based. And if you don't demonstrate it, then that's that. It's over. You lose. I'm sorry, Your Honor. I don't understand the – Well, it's his habeas, and he has the burden of showing that he's been wrongly – he's had his liberty wrongly curtailed by the government. If you don't appeal a conviction, you don't need any positive expression of waiver in order to make it final. If you don't appeal a deportation, you don't need any positive expression of waiver to make it final and something that can be relied upon separately. At least that's my understanding of the law. So it looks to me as though the discussion of waiver is misplaced. I must be misunderstanding something because that's what we're discussing. So educate me. My understanding is from the Biwak case is that if – and from the – one second, Your Honors. The Polaris, Golan, and Ubaldo Figueroa cases is that if there – we start with the waiver point first. If we cannot show that the waiver of his appellate rights were knowing and considered or that they were done, then the exhaustion requirement of exhausting through his appellate rights, that bar then falls if the demonstration of waiver is not made. So you're saying that a final conviction not appealed cannot be used as a final conviction unless there's proof by the government that the person knowingly and intelligently waived his right to appeal? That is my position, Your Honor. Now I get it. Would you like to save a little time? Yes. I'll save the rest of my time. Surely, Mr. Jay. May it please the Court. I'm William Jay with the Department of Justice representing the Attorney General. At no point in the 14-year history of petitioners' repeated entries into and removals from the United States has he at any point sought appellate relief from the Board of Immigration Appeals. That failure to seek appellate review is completely dispositive of this appeal. The exhaustion requirement is jurisdictional, and no exception applies that can rescue the claims that petitioner is intending to raise here. We know that the claims were not exhausted for at least three reasons. The record shows it. He has said it himself to the district court, and it is true by operation of law. The record shows it at page 48, where the Anster case history shows that no appeal was taken from either the 1994, 1995, or 2001 removal orders. He said it himself at pages 25 and 69 of the administrative record. Those are his supplemental briefs to the district court supplementing his habeas petition, in which he said, quote, administrative remedies have not been exhausted as required. And it's true by operation of law, because we can tell from the record that petitioner departed the day after the 1995 IJ order, if you look at page 318 of the administrative record. And if an alien departs during the appeal period, or after filing an appeal departs the country while it's pending before the DIA, under 8 CFR 1003.3 and .4, the appeal is withdrawn. So it's amply clear from the record in this case that no appeal has been taken to the BIA, and that failure to seek relief from the BIA under USC 1252 D1 bars this court from exercising jurisdiction over this petition for review. There is no futility exception that can help petitioner here. The closest thing that he comes to presenting that would establish such a futility exception is the court's decision in Sun v. Ashcroft, which did not, in fact, create a futility exception, because, as the court said in Sun, in order to establish futility, an alien must, at a minimum, establish the kind of futility that would be necessary to overcome prudential exhaustion, as opposed to a statutorily mandated exhaustion requirement as we have here. And that minimum wasn't satisfied in Sun, and it's certainly not satisfied here. What the court in Sun posited as an adequate futility exception that might be sustained in the future would be an en banc BIA decision in which the BIA had dug itself in so firmly that there was no point seeking review from the BIA. We don't have that here. What petitioner has identified is a regulation that was on the books in 1994, but it's on the books today. And it's not only on the books today, it's been codified into statute. 8 U.S.C. 1229A, subsection C3bv. So the law is the same today as it was in 1994. If the argument was futile back in 1994, it's futile today. If it is open to him today to make his argument about abstracts of judgment, it was open to him in 1994. He didn't make it. He didn't seek relief from the BIA. I don't think I've advanced to the point you're arguing. I feel like I must be missing something. Am I right that Woody Scott is criminal convictions that would make him removable? No appeals of the criminal convictions that would make him removable. Removal orders, no appeals to the BIA of the removal orders based on those convictions. That's absolutely right. A denial of bail and then an appeal to us that we sent to the district court to decide on the bail issue under its habeas corpus powers. And then an appeal to us from the district court's decision on bail. And that's it. I think that's right, Judge Kleinfeld. Have I got that right? I think you do. There is, in his brief, an attempt to take the habeas petition and say, what I'm attacking is the 1994, 1995, and 2001 removal orders. Although, as Judge Reimer pointed out, there's no separate argument about the merits of the 95 and the 01 removal orders, which, in fact, rest on different grounds of removability. But to the extent that that's what's presented here, it's barred. That's what I've got? So my understanding is actually correct? Your understanding is correct. What you have is an attempt to appeal three past removal orders that's jurisdictionally barred and an attempt to appeal a bail order, which has been sent to the district court because this court lacks jurisdiction over it, and which the district court has dismissed as moot because petitioner is not in custody. Now, the last thing you said also puzzled me and made me wonder if I was missing something. He keeps getting convicted of crimes, deported, and he keeps showing up. How come he's not in custody? He's not in custody, Your Honor, because he's been granted withholding of removal. Withholding of removal applies to a particular country, so he can't be removed to Mexico while that status remains in effect. And since under Section 1231, 8 U.S.C. 1231, there's a limited number of countries to which he can be removed. If he can't be removed to Mexico, at present he can't be removed. He's Mexican and he can't be removed to Mexico? That's right, Your Honor, because the immigration judge concluded that he had met the requirements for withholding of removal, showing that he would be subject to mistreatment in Mexico, and the Department of Homeland Security didn't appeal that withholding determination to the BIA. I do want to respond to something that my friend on the other side said, which is the notion that the 95 removal order would fall if the first removal order were also to fall. That's not correct because the ground for the 95 removal, and this is from the record, is under what's now 8 U.S.C. 1231 A-5, and 1231 A-5 expressly says that if you are an alien who's previously been removed, you come back to the country and you are removed on the basis of your previous removal, you may not, in attacking that ground of removal, attack your previous removal. So even if he had some separate argument as to why the 95 removal were invalid, he can't hang the 95 removal order on top of the 94 removal order. I'm still back on jurisdiction. If the district court denied his petition to be released on bond on the basis that he was already released on account of the IJ's order, so it was moot, what case or controversy do we have jurisdiction over? Well, I think, Your Honor, that you don't have statutory jurisdiction. But as far as the case being moot, when the case was transferred to this Court, this Court interpreted it as being in part a challenge to a final order of removal. That's why it was transferred to this Court, pursuant to Section 106C of the Real I.D. Act, and in part a challenge to the bond determination. And so the motions panel order, sending it back to the district court, sent back the bond determination and kept the rest. So to the extent that he has ---- What challenge remains to the bond interpretation if what he says is, I want to get out, and he's already out? None, Your Honor. And the district court has dismissed the bond claim as moot. What remains in this Court is the jurisdictionally barred challenge to his previous removal orders. And, you know, of course, the Court can look at different grounds for dismissing a petition for lack of jurisdiction. Is there anything that matters about those with respect to our jurisdiction except the extent to which they support holding him in custody and not releasing him on bond? Well, Your Honor, under the operation of the Real I.D. Act, the habeas petition is no longer a habeas petition. It's been transferred. It's been transmuted into a petition for review. And so to be sure, it is a jurisdictionally barred petition for review, but I don't think that the in-custody requirement applies any longer. Although, I mean, it is important to note that the only reason he was able to file a habeas petition is that he came back to the country and got himself into custody. Otherwise, he wouldn't have been able to invoke the jurisdiction of the district court at all to review his 94, 95, and 01 removal orders because, of course, a petition for review would have been woefully out of time with respect to those removals. If the Court has no further questions. I don't think so. Thank you, Mr. Che. Thank you, Your Honor. Mr. Bautista. Your Honors, I'd like to first briefly address the 95 order that the government contends was based on his reentry and then a reinstatement of the prior order. The government cited what is now 241A.5, but at the time of the 95, the second removal order, the previous version of that law, which was 242F, was in effect in place, and that law did not have the language of is not subject to being reopened or removed. So at that time, his 95 removal order is contingent and rises and falls with the 94 removal order. Then I just want to go back to and raise the Tarasoff case. It is our position that the record is so substantially incomplete on many of these issues of waiver, of exhaustion, that to raise the inferences that the government does about the grounds for his removal, for whether there was a knowing and considered waiver, are insufficient evidence and no fair inferences can be raised in that situation. If the Court has no further questions, then. I think not. Thank you. Thanks for your argument, counsel. The matter just argued will be submitted. And we'll next hear argument in Johnson. I'm getting squished on my slides. I'm getting squished on my slides. Thank you. Thanks. I appreciate it. Thank you.
judges: Fernandez, Rymer, Kleinfeld